**UNITED STATES of America, Plaintiff–Appellee,**

v.

**William R. BELL, Defendant–Appellant.**

No. 88–3375.

United States Court of Appeals, Seventh Circuit.

Submitted Feb. 13, 1990.

Decided April 25, 1990.

As Amended May 11, 1990.

Stephen J. Liccione, Asst. U.S. Atty., Office of the U.S. Atty., Milwaukee, Wis., for plaintiff-appellee.

William R. Bell, Lewisburg, Pa., pro se.

Before CUMMINGS, WOOD, Jr., and COFFEY, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

The only issue in this criminal appeal is whether the defendant William Bell waived his Sixth Amendment right to counsel. In a bench trial, Bell was convicted of bank robbery and sentenced to 186 months in prison. Because the record reveals that Bell knowingly and intelligently waived his right to counsel, we affirm the decision of the district court.

## I.

### BACKGROUND

On January 8, 1988, Bell walked into the Pewaukee branch of the First Wisconsin

Bank of Waukesha carrying a toy gun and wearing a halloween-type mask of former President Ronald Reagan. He announced a robbery, and told a teller to fill his Christmas shopping bag with money. The teller emptied the money from three teller's drawers into the bag. Bell instructed the tellers to go to a room in the rear of the bank, close the door, and remain there. He left with $12,000, including several "bait bills."

While the robbery was in progress, a teller pressed a silent alarm which activated a surveillance camera. The camera video-taped Bell's face as he removed his mask while leaving the bank. A parole officer recognized Bell from the picture and directed Federal Bureau of Investigation (FBI) agents to Bell's residence at a local YMCA. There the agents recovered much of the stolen money, including the bait bills.

At an initial appearance before Magistrate Goodstein on January 12, 1988, Bell was charged with robbing the First Wisconsin Bank of Waukesha in violation of 18 U.S.C. § 2113(a). The magistrate appointed Brian Blacher as defense counsel. At a preliminary hearing on January 26, 1988, the district court ordered Bell to undergo a competency evaluation pursuant to 18 U.S.C. § 4247. After being indicted, Bell filed a motion to represent himself and for appointment of stand-by counsel on February 29, 1988; his attorney filed a motion to withdraw based on a conflict with Bell over the defense theory. Despite the overwhelming evidence of his guilt, Bell wanted to conduct an "alibi-style defense" which would place him at a different place at the time of the robbery.

At an arraignment on April 8, 1988, the magistrate found that Bell was competent to stand trial and assist in his defense, based on the recommendation of the competency report and his performance at the hearing. The report suggested that while Bell would need to have his diabetes treated and regulated prior to trial, he was otherwise capable of participating with counsel and that he had a rational and factual understanding of the charges against him. The report offered no support for Bell's claims of amnesia and stated that the extensive evaluation did not reveal any severe mental disease or defect.

After finding Bell competent, the magistrate granted both Blacher's motion to withdraw and Bell's motion to represent himself with the assistance of stand-by counsel. Later the magistrate appointed David Lowe to act as Bell's stand-by counsel. Bell was subsequently found guilty of armed bank robbery after a bench trial and sentenced to a term of 186 months imprisonment. This timely appeal followed.[1]

## II.

### ANALYSIS

Our task is to determine from the record whether the accused understood the risks associated with proceeding *pro se* at trial when he elected to represent himself. *Faretta v. California*, 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975). While we have stopped short of mandating specific inquiries or special hearings, this court has stated its strong preference that trial courts, as a matter of course, conduct a formal inquiry in which the defendant is informed fully of the risks of proceeding *pro se* and is explicitly advised against

---

**1.** After filing the appeal, Bell sent to this court the following cryptic statement:

"WITHDRAW APPEAL 88–CR–06 ED–WIS FORTHWITH—RETURN ALL DOCUMENTS TO CHIEF JUDGE JOHN REYNOLDS OF THAT COURT X
APPEAL INTO THIS COURT NOT AUTHORIZED X"

The letter was signed by "WILLIAM R. BELL—GENERAL UNITED STATES AIR FORCE." Subsequently, this court entered an order stating that Bell's letter was not sufficient to withdraw his criminal appeal. *United States v. Bell*, No. 88–3375 unpublished order (7th Cir. April 26, 1989). The order added that if Bell wanted to voluntarily dismiss the appeal, he must file a motion to dismiss which clearly states that he wished to forego his appeal and waive his right to raise any issues on appeal as provided in Circuit Rule 51(d). The court received no further correspondence from Bell. Based on his failure to file a motion to dismiss, the case is properly on appeal.

self-representation.[2] *United States v. Moya–Gomez*, 860 F.2d 706, 733 (7th Cir. 1988), *cert. denied,* —— U.S. ——, 110 S.Ct. 146, 107 L.Ed.2d 104 (1989); *see United States v. Trapnell*, 638 F.2d 1016, 1029 (7th Cir.1980). Though this court has rejected the rigidity implicit in a formal inquiry, a district court must make a sufficient inquiry to satisfy itself that the defendant in fact understands the dangers involved in self-representation, particularly where there is a question regarding the defendant's competency as in this case. Guidelines for the appropriate inquiry are set forth for easy reference in 1 *Bench Book for United States District Court Judges* § 1.02 (Federal Judicial Center 1986); *Moya–Gomez*, 860 F.2d 732 n. 25. Although we stress the need for a thorough and formal inquiry, we shall not reverse the district court where the record as a whole demonstrates that the defendant knowingly and intentionally waived his right to counsel. *United States v. Mitchell*, 788 F.2d 1232, 1235–36 (7th Cir.1986).

█ The first factor we consider in determining if Bell knowingly and intelligently waived his right to counsel is whether the magistrate conducted a formal inquiry. *Moya–Gomez*, 860 F.2d at 733. At the hearing on Bell's motion to self-represent, the following colloquy between the magistrate, Bell, and Bell's appointed counsel Blacher took place:

> THE COURT: I believe you're able to assist someone in your defense. But I think you need legal assistance.
>
> BELL: There's no question about that, sir.
>
> THE COURT: Okay. Now let's talk about that.

BELL: All right.

\* \* \* \* \* \*

THE COURT: You filed a motion for self[-]representation, but in that motion recognized that you needed legal assistance.

BELL: I did.

THE COURT: Mr. Blacher filed a motion to withdraw.

BELL: He did.

THE COURT: Basically stating that there's a conflict in the way he views this case and the way that you view it. That sometimes happens.... Mr. Blacher, you believe that matters exist or conflicts exist that you, in good conscience, could not continue to represent Mr. Bell or even present his defense the way that he wishes it presented?

BLACHER: I think there's a real problem there, your Honor.

THE COURT: Another possibility, Mr. Bell, is of course to have you represent yourself with the assistance of what we call stand-by counsel.

\* \* \* \* \* \*

BELL: This is what I was going to ask, sir, would be the leave to self-represent, assisted by stand-by counsel.

THE COURT: Yeah, and what that means is the person—and the reason we appoint stand-by counsel is to protect and insure the continuity of the proceedings and the integrity of the proceedings. And obviously, you can't draw up a lot of papers on your own behalf, and stand-by counsel does that and can assist in the investigation in making contacts.

\* \* \* \* \* \*

BELL: That's it. I think I can do it, sir.

---

2. In *McDowell v. United States*, 484 U.S. 980, 108 S.Ct. 478, 98 L.Ed.2d 492 (1987), Justice White dissented from a denial of a petition for a writ of certiorari noting a split in the circuits over the extent of inquiry necessary before allowing an accused to waive his right to counsel. Five circuits require either a "searching inquiry" or a special hearing to ensure that the defendant understands the dangers of proceeding *pro se. Id.* (citing *United States v. McDowell,* 814 F.2d 245, 249 (6th Cir.1987); *United States v. Bailey,* 675 F.2d 1292, 1300–01 (D.C.Cir.), *cert. denied,* 459 U.S. 853, 103 S.Ct. 119, 74 L.Ed.2d 104 (1982); *United States v. Welty,* 674 F.2d 185, 188–89 (3rd Cir.1982); *United States v. Edwards,* 716 F.2d 822, 824 (11th Cir.1983); *United States v. Chaney,* 662 F.2d 1148, 1152 (5th Cir.1981)). Four other circuits, including this circuit, have no such requirement. *McDowell,* 108 S.Ct. 478–79 (citing *United States v. Hafen,* 726 F.2d 21, 26 (1st Cir.), *cert. denied,* 466 U.S. 962, 104 S.Ct. 2179, 80 L.Ed.2d 561 (1984); *United States v. Kimmel,* 672 F.2d 720, 721–22 (9th Cir.1982); *United States v. Trapnell,* 638 F.2d 1016, 1029 (7th Cir.1980); *United States v. Tompkins,* 623 F.2d 824, 828–29 (2nd Cir.1980)).

THE COURT: Okay. That's the question we have to deal with. Do you wish to waive your right to representation by counsel and invoke your right to self-representation with the assistance of stand-by counsel? Is that what you wish to do, Mr. Bell?

BELL: Yes Sir.

Tr. of April 8, 1988 at 24–29. The magistrate went on to further explain to Bell the role of stand-by counsel.

This exchange between the magistrate and Bell was inadequate, standing alone, to inform Bell of the dangers and disadvantages of self-representation. *See Faretta,* 422 U.S. at 836, 95 S.Ct. at 2541. In fact the magistrate did not mention any risks associated with proceeding *pro se.* The magistrate's failure to inform Bell of the dangers and disadvantages of self-representation weighs against a finding of a knowing or intelligent waiver.

■■■ The court is also troubled by the silence throughout this exchange of the Assistant United States Attorney (AUSA). As an officer of the court, the AUSA has some responsibility to ensure, as far as may be reasonably possible, the integrity of the proceedings. To this end, the AUSA should have assisted the magistrate by calling to his attention the possible inadequacy of these warnings.

■■ A second factor in deciding whether there has been a valid waiver is whether other evidence in the record establishes that the defendant in fact understood the dangers and disadvantages of self-representation. *Moya–Gomez,* 860 F.2d at 736. Bell acknowledged in his request for standby counsel that he needed the assistance of an attorney. Bell admitted at the hearing that he would be at a "disadvantage" by self-representing. We also note that the magistrate read the indictment to Bell, the AUSA informed Bell of the maximum penalty, and Bell clearly understood the nature and seriousness of the charges against him.

Before and during the trial, Bell consulted often with stand-by counsel Lowe, sometimes taking his advice and other times rejecting it. The district court repeatedly admonished Bell to consult with Lowe. In fact, Lowe filed several pre-trial motions on Bell's behalf. Also, Bell allowed Lowe to argue certain contentions regarding the pre-sentence report, and Lowe made a statement prior to sentencing. Bell's recognition of the importance of having the assistance of counsel and his reliance on stand-by counsel weigh in favor of finding a knowing waiver.

A third factor to consider is the background and experience of the defendant. *Id.* The record indicates that Bell was no stranger to the criminal justice system.[3] In fact, Bell represented himself during several proceedings before a district court on a prior charge of bank robbery. *See United States v. Bell,* 572 F.2d 579, 580 (7th Cir.1978). On appeal in that case, this court reversed the conviction because a district court failed to rule on a motion to withdraw a plea of guilty before sentencing. *Id.* at 579. The court admonished Bell to accept the assistance of counsel on remand, adding that "[i]f defendant is so ill-advised as to refuse appointed counsel and insists on acting *pro se,* stand-by or advisory counsel should be appointed for him." *Id.* at 582.

Bell's presentation at trial in this case was passable. In fact, the district court commended Bell on his performance.[4] Re-

---

**3.** Bell's criminal record dates back to 1954, when he was convicted of armed robbery. In 1958, he was convicted of the unauthorized interstate transportation of a motor vehicle. In 1967, he was convicted of forging money orders. In 1976, he was convicted of armed bank robbery. In 1984, he was convicted of battery. In addition, Bell was twice convicted of escape. See Tr. of January 15, 1988 at 25–26.

**4.** The district court stated:
  I find that [Bell's] approach to the defense of this case in some respects is better than I have seen with regard to lawyers in the courtroom.
  And while that may not be a particularly good comment about the legal profession, nonetheless, it does bespeak Mr. Bell's ability to not only appreciate the fact that he is here in a court of law and handles himself generally in an appropriate manner, but he did so better than a lot of lawyers.
Tr. of September 15, 1988 at 335–36.

garding his education, Bell obtained a general education degree and claimed to have two years of college education. Bell's extensive prior experience with the legal system, his performance at trial, and his education weigh in favor of finding an intelligent waiver.

A fourth factor is the context of the defendant's decision to proceed *pro se*. *Moya–Gomez*, 860 F.2d at 736. Bell's decision to proceed *pro se* was the result of his attorney's unwillingness to present Bell's alibi defense. This decision was a tactical one on Bell's part, and as such supports a finding of a knowing waiver.

### III.

### CONCLUSION

This case is a close one due to the inadequacy of the magistrate's warnings to Bell. However, looking at the record as a whole, as we must, *id.*, at 733, we conclude that Bell knowingly and intelligently waived his right to counsel. For that reason the decision of the district court is

AFFIRMED.